**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEONNA LYNN RAWLINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:26-cv-00500 |
| | ) | Judge Nora Barry Fischer |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security | ) | Docket No. 8 |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

Keonna Lynn Rawlings ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383 (the "Act"). (Docket No. 3). Now pending before the Court is Plaintiff's Motion for Summary Judgment (Docket No. 8), which has been fully briefed. (Docket Nos. 8-11). As under the applicable standard of review the Court finds that the determinations below were supported by substantial evidence, it will deny Plaintiff's motion and grant judgment in favor of the Commissioner.

## II. PROCEDURAL HISTORY

On November 8, 2023, Plaintiff filed an application for SSI alleging disability as of December 1, 2016 due to multiple medical conditions including fibromyalgia, lupus, arthritis, Sjogren's syndrome, diabetes, neuropathy, and migraines (Administrative Transcript, Docket No.

4 (hereafter "Tr.") at 51-56, 234-40, 258).[1] Her application was denied by the Social Security Administration (the "SSA") at the initial and reconsideration levels of review in April and July 2024, respectively. (Docket No. 8 at 1; Tr. at 117-26). It then proceeded to a telephonic Administrative Law Judge ("ALJ") hearing before ALJ Paul Kovac on April 16, 2025, at which Plaintiff (whose then-counsel was also present) and an impartial vocational expert testified. (Tr. at 40-72). On May 28, 2025, ALJ Kovac issued a lengthy decision (the "Decision") denying Plaintiff's application, and the Appeals Council thereafter denied her request for review, rendering that Decision final pursuant to 20 C.F.R. § 404.981. (Docket No. 8 at 1; Tr. at 1-6, 14-39).[2]

---

[1] A certified copy of the transcript of the complete administrative proceedings was made of record at Docket No. 4 as follows: 4-1 Court Transcript Index; 4-2 pp. 1-72; 4-3 pp. 73-108; 4-4 pp. 109-229; 4-5 pp. 230-253; 4-6 pp. 254-330; 4-7 pp. 331-1092; 4-8 pp. 1093-1269; 4-9 pp. 1270-1377.

[2] In reaching his determination, ALJ Kovac found that Plaintiff (1) had not engaged in substantial gainful activity since her application date; and (2) had eleven severe medically determinable impairments ("MDI"s), specifically: fibromyalgia, lupus, migraine headache disorder, diabetic neuropathy, chronic pain syndrome, Sjogren's Syndrome, gastroparesis, left carpal tunnel syndrome, degenerative disc disease, degenerative joint disease in the hips and left shoulder, and obesity - as well as several non-severe impairments, including mental health impairments; (3) none of which met or equaled the severity of a listed impairment. (Tr. at 20-25); *see also* Section III, *infra*.

In then formulating Plaintiff's residual functional capacity assessment ("RFC") at step (4), the ALJ found that Plaintiff had:

> the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is limited to frequently reaching in all directions, bilaterally; frequently handling, feeling, and fingering, bilaterally; occasionally bending, stooping, kneeling, crouching, crawling, and climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; never working in high exposed places; never working in proximity to moving mechanical parts; occasionally driving and operating machines and equipment; tolerating occasional exposure to humidity, wetness, extreme heat, extreme cold, and atmospheric conditions such as fumes and pulmonary irritants; tolerating exposure to moderate noise; never performing work requiring a specific production rate such as assembly line work or work requiring hourly quotas; and occasionally dealing with changes in a routine work setting.

(Tr. at 25-33). After finding that claimant had no past relevant work, the ALJ concluded, on evidence of the vocational expert, that Plaintiff's RFC, age (as a "younger" individual under the Act), and high school education were compatible with substantial other work in the national economy (*e.g.*, representative jobs such as marker, routing clerk, office helper), sufficient to warrant his finding that Plaintiff was not disabled. (Tr. at 33-35). *Cf. Bridgette T. v. Comm'r of Soc. Sec.*, 2026 WL 776218 (D.N.J. Mar. 19, 2026) (finding claimant with multiple severe medically determinable impairments, including fibromyalgia, capable of performing jobs available in the national economy, including that of marker or routing clerk).

Plaintiff filed her Complaint on February 12, 2026. (Docket No. 3). The issues at hand are whether (a) substantial evidence exists in the record to support the ALJ's May 28, 2025 Decision and (b) the correct legal standard was employed. More particularly, Plaintiff submits that the ALJ erred in (a) "placing undue reliance on a lack of objective evidence in a fibromyalgia case" in assessing the opinion of Dr. Walker, a treating physician; (b) "determining Plaintiff's RFC based on his own lay interpretation of the medical records"; and (c) "failing to adequately develop the record with respect to Plaintiff's rheumatology". (Docket No. 8 at 1).

## III. STANDARD OF REVIEW

To be eligible for benefits under the Act, a claimant must demonstrate that she cannot engage in "substantial gainful activity" because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the

SSA/Commissioner at step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, she is able to perform substantial gainful activity in jobs available in the national economy. *See e.g.*, *Edwards v. Berryhill*, No. CV 16-475, 2017 WL 1344436, at *1 (W.D. Pa. Apr. 12, 2017); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

The Court's review of the agency's final decision is plenary for questions of law. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). It reviews the ALJ's findings of fact for "substantial evidence" and reviews the administrative record as a whole. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 42 U.S.C. § 405(g));[3] *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002); *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983). This evidentiary threshold is not high, and "substantial evidence" means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154; *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the ALJ's decision is supported by such evidence, it is conclusive. The Court may not "set aside" the decision "even if this Court 'would have decided the factual inquiry differently.'" *Hansford v. Astrue*, 805 F. Supp. 2d 140, 143 (W.D. Pa. 2011) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

As the Supreme Court has explained, however, the ALJ must provide a satisfactorily clear articulation of the basis for his conclusions:

> An agency action qualifies as "arbitrary" or "capricious" if it is not "reasonable and reasonably explained." *FCC* v. *Prometheus Radio Project*, 592 U. S. 414, 423, 141 S. Ct. 1150, 209 L. Ed. 2d 287 (2021). In reviewing an agency's action under that standard, a court may not "'substitute its judgment for that of the Agency.'" *FCC*

---

[3] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business.

> v. *Fox Television Stations, Inc.*, 556 U. S. 502, 513, 129 S. Ct. 1800, 173 L. Ed. 2d 738 (2009). But it must ensure, among other things, that the agency has offered "a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co*., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983) (internal quotation marks omitted).

*Ohio v. EPA*, Nos. 23A349, 23A350, 23A351, 23A384, 2024 U.S. LEXIS 2846, at *18 (June 27, 2024); *see also Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981); *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (noting that ALJ must "build an accurate and logical bridge between the evidence and the result"). And as the Supreme Court reiterated in *Ohio v. EPA*, *supra*, *w*hen considering a case, a district court can neither conduct a *de novo* review of the decision nor re-weigh the evidence of record. It must judge, under the applicable standard, the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947).

## IV. ANALYSIS

As noted in Section II, Plaintiff asserts that the ALJ's Decision erred in (a) "placing undue reliance on a lack of objective evidence in a fibromyalgia case" in assessing the opinion of Dr. Walker, a treating physician; (b) "determining Plaintiff's RFC based on his own lay interpretation of the medical records"; and (c) "failing to adequately develop the record with respect to Plaintiff's rheumatology". (Docket No. 8 at 1). While not unsympathetic to her medical history, the Court must reject Plaintiff's contentions and affirm the Decision. More particularly:

### A. The ALJ's Assessment of Dr. Walker's Opinion

The now-applicable regulations do not require that the ALJ give any specific evidentiary weight to any particular medical opinion. Instead, the ALJ must consider all medical opinions and "evaluate their persuasiveness" based on supportability; consistency; relationship with the

claimant; specialization; and other non-exclusive factors - with the first two factors being the most important. 20 C.F.R. §§ 416.920c(a)-(c).[4]

Plaintiff's assertions to the contrary notwithstanding, ALJ Kovac's Decision discussed and considered Dr. Walker's opinion regarding the disabling impact(s) of Plaintiff's fibromyalgia under the appropriately cited factors of "consistency and supportability". *See* 20 C.F.R. §§ 416.920c(b)(2)-(3). The Decision acknowledged the August 2023 opinion of Dr. Walker – stating that Plaintiff's fibromyalgia and diabetes "completely disable[s]" her from "working to sustain supporting herself". But the ALJ found Dr. Walker's opinion unpersuasive due to its inconsistencies and lack of support – as by his own treatment notes/findings; the wider administrative record, including other physical examination reports; and its reliance on Plaintiff's self-reporting of her symptoms - as canvassed in his Decision. (Tr. at 31, 345-347, 438, 441, 445; Docket No. 9 at 5-6).[5]

Plaintiff asserts that the ALJ erred in rejecting Dr. Walker's opinion "based on a lack of objective medical evidence with a primary impairment of fibromyalgia at issue" , as "fibromyalgia pain is oftentimes unaccompanied by abnormal examination findings or objective medical evidence." (Docket No. 8 at 7). In doing so, however, she misperceives the bases and content of

---

[4] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s). . ., the more persuasive the medical opinions . . . will be." And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." An ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source opinion. *Id.*, *see also* Docket No. 9 at 5.

[5] *See also* Tr. at 24-39 (Decision, providing detailed review and explication of medical record).

*See e.g.*, *Torres v. Barnhart*, 139 F. App'x 411, 415 (3d Cir. 2005) (ALJ may consider discrepancies between source's medical opinion and treatment notes for purposes of persuasive power in a disability analysis); *Tilton v. Colvin*, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016) (treating source opinion about claimant's residual capacity is weighed by ALJ with other evidence that claimant engaged in inconsistent activities).

the Decision as well as the governing law. To the contrary, and as Defendant clearly and correctly notes:

> Social Security Ruling (SSR) 12-2p explains what evidence is needed to establish fibromyalgia as a medically determinable impairment and how an adjudicator evaluates fibromyalgia throughout the sequential evaluation process. 2012 WL 3104869 (S.S.A.). . . . If fibromyalgia meets the necessary medical criteria to establish a medically determinable impairment, then the ALJ evaluates the intensity and persistence of the individual's symptoms to determine the extent to which they limit the individual's capacity for work. When considering the intensity and persistence of an individual's symptoms, an ALJ must consider all available evidence. 20 C.F.R. § 416.929(c)(1); SSR 16-3p, 2017 WL 5180304, at *5-8. This evidence includes medical opinions, objective medical evidence, and "other" evidence, with factors for evaluation including daily activities; location, duration, and frequency of symptoms; precipitating and aggravating factors; type and effectiveness of medication; treatment other than medication; and other measures taken to relieve symptoms. 20 C.F.R. § 416.929(c)(3).
>
> And where, as here, the plaintiff has co-occurring impairments that could cause pain or other symptoms, the Third Circuit and courts within this circuit, have held that an ALJ does not err in considering the objective medical evidence as one factor in the evaluation of the plaintiff's subjective complaints as a whole. *Trauterman v. Comm'r of Soc. Sec.*, 296 F. App'x 218, 220 (3d Cir. 2008); *see also, e.g., Ilaria G. v. Colvin*, Civ. No. 22-1366, 2024 WL 5244864, at *20 (D.N.J. Dec. 30, 2024) ("[A]s the Court has already explained, the ALJ properly considered the objective evidence relating to Plaintiff's degenerative disc disease of the cervical and lumbar spines as well as fibromyalgia."); *Burns v. Soc. Sec. Admin.*, No. 14-1485, 2016 WL 344729, at *5 (W.D. Pa. Jan. 28, 2016) (finding the ALJ appropriately considered the objective medical evidence of record where the "disability claim is not based solely on his fibromyalgia"). Here, Plaintiff did not even list fibromyalgia as one of the conditions limiting her ability to perform substantial gainful activity (Tr. 258). Instead, she listed a host of other physical impairments, including Lupus, arthritis, Sjogren's syndrome, diabetes, neuropathy, and chronic migraines (Tr. 258). Moreover, Dr. Walker explicitly stated in his medical opinion that it related to Plaintiff's fibromyalgia and diabetes (Tr. 346). Thus, the ALJ was not precluded from considering the objective medical evidence because Plaintiff had a co-occurring impairment that could cause her limitations.

(Docket No. 9 at 6-8).

In considering the evidence of fibromyalgia, the ALJ noted Plaintiff's accounts of fatigue, pain and brain fog, and using medical marijuana for pain and other symptom relief. He noted exam findings of four/multiple tender trigger points and diagnosis. (Tr. at 25-28, citing medical record, Tr. at 1065). And he found a consultative examiner's opinion that Plaintiff could frequently perform postural maneuvers to be inconsistent with her allegations of fatigue and widespread pain, and her confirmed trigger points.[6] Ultimately, the ALJ carefully/fully considered and incorporated in the RFC what he found persuasive - in Dr. Walker's opinion and the broader evidentiary record - regarding the assertedly work preclusive effects of Plaintiff's fibromyalgia; and sufficiently explained his reasoning. *See* Docket No. 9 at 8-9.

More generally, ALJ Kovac's Decision expressly concluded after "careful consideration of the entire record" – *e.g.*, the mixed/equivocal picture that emerged from Plaintiff's treatment history, multiple medical consultant reviews, and self-reported activities of daily living – that her impairments were not entirely work disabling.[7] Rather, the ALJ noted that Plaintiff's subjective statements concerning the "intensity, persistence and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence" of record, as explained in the Decision, and accordingly found them to affect her work only to the extent they could reasonably be accepted as consistent. (Tr. at 25-27). *See also* discussion *infra*, Section IV(B).

---

[6] Tr. at 31 (including "postural and environmental limitations" in the RFC "due to the claimant's autoimmune disorders, orthopedic conditions, fibromyalgia, diabetes mellitus, obesity, and migraine headaches"). *See also id.* at 32 (including psychological restrictions as "supported by the claimant's fibromyalgia (i.e., pain, fatigue, and brain fog).

[7] In assessing Plaintiff's subjective complaints, the ALJ also considered Plaintiff's activities of daily living, which included participating in Bible study, working a summer job, volunteering, getting ready to move, assisting with a "demanding" after school program, planning a vacation, and working for a marketing agency (Tr. at 32, citing Tr. 973, 982, 1001, 1029, 1038).

**B. The ALJ's Determination of the RFC**

The ALJ's RFC assessment is, like other aspects of the Decision, subject to deferential "substantial evidence" review. *See* Section III, *supra*. Residual functional capacity is the most that a claimant can do despite her limitations. See 20 C.F.R. § 416.945(a)(1). The RFC assessment is an administrative finding, not a medical opinion, and the law is clear that it is the ALJ, and "not treating or examining physicians or State agency consultants" who "must make" that assessment. *See e.g., Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *see also* 20 C.F.R. § 416.946(c). The RFC assessment is based on all of the relevant evidence, including, *e.g.*, the medical records, medical source opinions, and the individual's subjective allegations and description of her own limitations. 20 C.F.R. § 416.945.

Thus, Plaintiff's objections notwithstanding,[8] the ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler*, 667 F.3d at 362. To the contrary, as the Third Circuit has explained, an ALJ is not required to thusly premise the facts in his decision, nor does he reach a decision based on "improper lay opinion regarding medical evidence" for lack of matching expert opinion evidence. *Chandler*, 667 F.3d at 362. [9]

---

[8] (Docket No. 8 at 14).

[9] As our sister court in the Middle District of Pennsylvania has observed: even where "well-supported medical sources have opined regarding limitations which would support a disability claim", but an ALJ has relied upon his "lay assessment of other evidence", such as "contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC", the courts have sustained the ALJ's "exercise of independent judgment based upon all of the facts and evidence. . . [O]nce the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential . . . ." *Sanchez v. Comm'r of Soc. Sec*., 2022 WL 906046. *4 (M.D. Pa. Mar. 29, 2022).

*Cf. also Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC); *Cummings v. Colvin*, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

Here, ALJ Kovac's RFC determination was supported by substantial evidence. After reviewing all of Plaintiff's medical records, as well as opinions from medical consultants and Plaintiff's treating physician, he concluded that Plaintiff's limitations and subjective complaints were adequately accommodated by an RFC of light work with specified exceptions. *See supra*, n. 2. And in so doing, he explained his analysis of both the consistency and supportability of Dr. Walker's and other opinions. ALJ Kovac then rejected the opinion evidence which he concluded to be importantly inconsistent with or unsupported by Plaintiff's evidentiary record as a whole, including those which demonstrated/attested that her activities included volunteering, church and Bible study, vacations, part-time employment (*e.g.*, with a marketing company and a summary job), preparing to move, and schooling her daughter. (Tr. at 32 (providing record citations); Docket No. 9 at 1, 3). *See e.g., Sanchez,* 2022 WL 906046 at *4 (noting in affirming denial that "during the pertinent time period, the evidence revealed" that claimant exercised, traveled, and engaged in an "array of activities indicative of some ability to work" including attending to personal needs and some cooking, shopping and housework); *id.* (noting that treatment records indicated "a history of fibromyalgia with related complaints but with no abnormal physical examination findings to support such a diagnosis" and that "evidence that other disorders that could cause . . . symptoms, signs, or co-occurring conditions" had not been excluded).[10]

---

[10] *Cf. Fleming v. Comm'r of Soc. Sec.,* 2026 WL 473970 (3d Cir. Feb. 19, 2026) (affirming denial of claim where ALJ's determination of RFC was not unfounded); *id.* (noting that "[o]n the whole, the Administrative Law Judge relied on 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting *Biestek,* 587 U.S. at 103).

*See also* Docket No. 9 at 11-13 (citing additional case authority for the ALJ's independent RFC determination and distinguishing Plaintiff's reliance on pre-regulatory amendment cases (Docket No. 8 at 15-18) in an extended explication with which the Court largely concurs). *Id.* at 11-13 (citing 56 Fed. Reg. 36932, at 36934-38; 20 C.F.R. § 416.927; 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); 20 C.F.R. § 416.920c; 56 Fed. Reg. 57928-01, at *57939-40 (1991) (amending 20 C.F.R. § 416.945(a) to describe RFC "as an 'assessment,' rather than a 'medical assessment'"); 56 Fed. Reg. 36932- 01, at *36934; SSR 96-8p, 1996 WL 374184, at *2; 20 C.F.R. §§ 416.945(a); 416.946(c); 416.920c(a); SSR 96-8p, 1996 WL 374184, at *2); *id.* at 12-13 (concluding that under governing regulations the ALJ "is charged with making" the administrative assessment about a claimant's RFC, which is "based on all the relevant evidence in the case record").

Having parsed through the medical clinical and opinion evidence, and thence found that Plaintiff could perform jobs that existed in significant numbers in the national economy, ALJ Kovac determined that Plaintiff had not met the showing necessary to sustain her claim for benefits and denied it. *Cf.* Docket No. 9 at 13 ("[T]he ALJ was permitted to assess an RFC that was more limiting than the prior administrative medical findings and the consultative examiner's opinion, and less limiting that Dr. Walker's opinion. The absence of a matching medical opinion does not require remand. Moreover, the ALJ more than sufficiently explained his reasoning.").

**C. The ALJ's Failure to "Develop The Record" Regarding Plaintiff's Rheumatology**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d); 42 U.S.C. § 1382c(a)(3)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a); 416.912(a).[11] *Cf. Webster v. Berryhill*, No. 3:16-CV-02403, 2018 WL 1322066, at *5 (M.D. Pa. Jan. 22, 2018), report and recommendation adopted, 2018 WL 1315662 (M.D. Pa. Mar. 14, 2018) (ALJ was not obligated to appoint a medical expert to fully develop record); *Money v. Barnhart*, 91 F. App'x 210, 216 (3d Cir. 2004) (ALJ is not required to "search out all relevant evidence which might be available, since that would in effect shift the burden of proof to the government").

Moreover, Plaintiff was represented by counsel, and ALJ Kovac held the administrative hearing record open for two weeks (the time requested) to allow counsel to provide "some other" delayed/yet to be obtained treatment records, which the ALJ would then promptly review. (Docket

[11] The burden shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that could be performed consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1512(f), 416.912(f).

No. 9 at 14-16, citing Tr. at 46-47, 71 ). As noted in the Decision, Plaintiff's counsel failed to submit, or request additional time to obtain, additional medical records. (Docket No. 9 at 16, citing Tr. at 17). *Cf. Batts v. Barnhart*, No. 01-cv-507, 2002 WL 32345745, at *8 (E.D. Pa. Mar. 29, 2002) (ALJ "is entitled to assume that [represented] applicant is making his strongest case for benefits"), adopted by 2002 WL 862575 (E.D. Pa. May 3, 2002) (quoting *Glenn v. Sec'y of Health and Human Servs*., 814 F.2d 387, 391 (7th Cir. 1987)); *see also* 20 C.F.R. § 404.1740(b)(1).

## V. CONCLUSION

In sum, the Court has applied the applicable standard and finds that the ALJ's Decision (a) properly included and considered the evidence and opinions of record, (b) sufficiently explained the ALJ's reasonings and findings to permit the Court's meaningful review - including with sufficient reference to evidentiary support and consistency, (c) properly assessed and determined an RFC, and (d) based its denial of benefits on substantial evidence found and reasonable decisions made. *See* Sections III and IV, *supra*. Plaintiff's Motion for Summary Judgment [8] is therefore denied and the decision of the SSA/Commissioner is affirmed. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: October 23, 2026
cc/ecf: All counsel of record.